

**FILED**

September 20, 2023 11:21 AM
SX-2013-CV-00377
TAMARA CHARLES
CLERK OF THE COURT

IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

RANDY BURKE,

Petitioner,

v.

ARIEL M. SMITH, ESQ., Attorney General of
the Virgin Islands; WYNNIE TESTAMARK,
Director, Virgin Islands Bureau of Corrections;
DANA GRANT, Acting Warden, John A. Bell
Correctional Facility[1]

Respondents.

**CASE NO. SX-2013-CV-00377**

PETITION FOR WRIT OF
HABEAS CORPUS

2023 VI SUPER 57U

## MEMORANDUM OPINION AND ORDER

¶ 1 Before the Court is Petitioner Randy Burke's Motion for Writ of Habeas Corpus and/or Motion for Injunctive Relief ("Petition"), filed October 22, 2013. On the same date, Petitioner filed his Motion for Writ of Mandamus ad Testificandum, seeking an order of this Court mandating that the Virgin Islands Bureau of Corrections ("BOC") effectuate the return of Petitioner to the Virgin Islands from the facility in the State of Viginia to which he had been transferred. Because both Motions seek essentially the same relief, both together are considered to constitute the Petition herein. For the reasons that follow, the Petition will be granted in part and denied in part.

¶ 2 Petitioner also filed on the same date his Motion for Leave to Proceed In Forma Pauperis Pursuant to Title 4 V.I.C. § 513(a), Motion for Service of Process by the Superior Court Marshal Service, and Motion for Appointment of Counsel, filed October 22, 2013. Those Motions are addressed in a separate Order.[2]

---

[1] Pursuant to V.I. R. Civ. P. 25(d), the named Respondents are automatically substituted as parties for the public officials originally named who have since ceased to hold such offices.

[2] On August 10, 2016, Petitioner filed his "Supplemental Complaint" in this Court under this case number, naming sixteen different named "Defendants," seeking relief pursuant to 42 U.S.C. § 1983, to remedy alleged Constitutional violations of his First and Fourteenth Amendment rights, as well as alleged violations of the Religious Land Use and Institutionalized Persons Act (42 U.S.C. § 2000cc). Petitioner apparently filed the same pleading in the United States District Court for the Western District of Virginia (Case No. 7:16-cv-00365). On appeal from the District Court's entry of summary judgment in favor of the Virginia Department of Corrections ("VDOC") defendants, the U.S. Court of Appeals for the Fourth Circuit found that Burke had alleged a genuine dispute of material fact as to whether VDOC's grooming policy substantially burdened his religious exercise, and vacated and remanded that issue. In all other respects, summary judgment was affirmed. *See Burke v. Clarke*, 842 F. App'x 828 (4th Cir. 2021). Following

¶ 3    On August 15, 2014, the matter was designated to the Magistrate Division pursuant to 4 V.I.C. § 123(b) "[t]o conduct hearings and submit proposed findings of fact and make recommendations for the disposition by a Superior Court judge of any motion of applications of post trial relief made by individuals convicted of criminal offenses." On August 21, 2018, the Magistrate Division entered its Order that it lacked jurisdiction over the matter and returned the case to the undersigned.

## BACKGROUND

¶ 4    Petitioner was convicted of Murder in the First Degree and Reckless Endangerment in SX-2006-CR-00495, and was sentenced by Judgment and Commitment entered April 19, 2013, memorializing the sentencing hearing conducted March 14, 2013, to periods of life imprisonment and five years, respectively, to be served concurrently. Petitioner Burke was transferred from the Golden Grove Adult Correctional Facility in St. Croix to Red Onion State Prison in Virginia on or about April 12, 2013.[3] At Red Onion, Petitioner claims that he was placed in segregation for being noncompliant with the VDOC grooming policies, specifically because he refused to cut his dreadlocks. In segregation, Petitioner alleges that he was deprived of access to religious services and was denied participation in vocational and educational programs, as well as access to Virgin Islands legal materials.

¶ 5    Petitioner alleges that his transfer to Red Onion, without prior notice or hearing and without having been charged with any institutional infractions, violated both his due process rights and prerequisites mandated by the Code of Virgin Islands Rules.[4] After his Petition was filed, Petitioner was transferred on or about May 30, 2014 to Wallens Ridge State Prison in Virginia. He claims that he was restricted to solitary confinement in both institutions and segregated from the general prison population, for a total of 13 months for his refusal to adhere to grooming policies. That segregation, Petitioner asserts, deprived him of his First Amendment right to exercise his religious beliefs and of his right to equal protection under the law. He further claims that the segregation constituted cruel and unusual punishment in violation of his rights under the Eighth Amendment. Additionally, Petitioner alleges that VDOC denied him access to law books, and to educational and vocational programs, violating the BOC Director's statutory obligation to

---

remand, by Final Order entered January 7, 2022, the case was dismissed with prejudice pursuant to stipulation of the parties. The allegations of the Supplemental Complaint are considered herein for the purpose of determining whether Petitioner has stated a prima facie case that he is entitled to relief.

[3] The John A. Bell Adult Correctional Facility in St. Croix is formerly known as Golden Grove Adult Correctional Facility.

[4] Code of U.S. Virgin Islands Rules, Title 5, Chapter 401, Subchapter 4503: Criminal Procedure; Bureau of Corrections, states:

> A committee of three persons shall be formed to hold an administrative hearing prior to the transfer of any prisoner from prison facilities in the Virgin Islands to stateside prison facilities.

Title 5 C.V.I.R. § 4503-1.

"ascertain and insure the availability of educational and/or vocational programs" at any institution to which BOC inmates are to be transferred. 5 V.I.C. § 4503(c). None of Petitioner's claims has been presented before and none is procedurally or otherwise barred as a matter of law.[5]

## STANDARD OF REVIEW

¶ 6     Title 5 V.I.C. § 1303 and V.I. H.C.R. 1(c) grant the Superior Court of the Virgin Islands authority to hear petitions for writ of habeas corpus. "Every person unlawfully imprisoned or restrained of his liberty, under any pretense whatever, may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment or restraint." 5 V.I.C. § 1301. "Any person who believes he or she is unlawfully imprisoned or detained in custody, confined under unlawful conditions, or otherwise unlawfully restrained of his or her liberty, may file a petition for a writ of habeas corpus to seek review of the legality of that imprisonment or detention." V.I. H.C.R. 2(a)(1).

¶ 7     "The United States Supreme Court has repeatedly held that, at a minimum, the common law writ of habeas corpus encompasses a right to remedy constitutional violations." *Rivera-Moreno v. Gov't of the V.I.*, 61 V.I. 279, 297 (V.I. 2014). Because the presumption of innocence does not apply during habeas proceedings as "[w]hen a defendant seeks to challenge the determination of guilt after he has been validly convicted and sentenced, it is fair to place on him the burden of proving his innocence, not just raising doubt about his guilt." *Fahie v. Gov't of the V.I.*, 73 V.I. 443, 452, 2020 VI 6 ¶ 18 (V.I. 2020) (quoting *Herrera v. Collins*, 506 U.S. 390, 443 (1993)).

¶ 8     The Virgin Islands Habeas Corpus Rules provide:

> When presented with a petition for a writ of habeas corpus, within the period(s) specified in this Rule the Superior Court must first determine whether the petition states a prima facie case for relief -- that is, whether it states facts that, if true, would entitle the petitioner to discharge or other relief -- and, in its discretion, may also determine, after providing the petitioner with reasonable notice and a right to be heard, whether the stated claims are for any reason procedurally or substantively barred as a matter of law.

V.I. H.C.R. 2(b)(1).

¶ 9     Further, the Rules explain:

> The court must issue a writ of habeas corpus if the petitioner has alleged, prima facie, grounds showing entitlement to relief and the claims are not legally barred.

---

[5] In addition to the post-conviction relief sought in federal court, Petitioner has filed two other habeas petitions in the Superior Court. In SX-2015-CV-00518, Petitioner presented an ineffective assistance of trial counsel claim that was denied after hearing by the Superior Court by Order entered March 8, 2018, affirmed (in S. Ct. Civ. No. 2018-0031) by Opinion and Order of the Supreme Court dated February 13, 2019. *Burke v. Prosper*, 70 V.I. 866, 2019 VI 6 (V.I. 2019). In a matter presently pending, Petitioner seeks habeas relief from the denial by the Director of BOC of his 2022 and 2023 applications for recommendation for early parole. (SX-2023-MC-00033).

In assessing whether the petitioner would be entitled to relief if the factual allegations were proved, the court must take petitioner's factual allegations as true. The court does not determine at this stage whether the petitioner is entitled to discharge or any other form of remedy if habeas corpus relief is ultimately granted. The issuance of a writ of habeas corpus under this Rule is an intermediate step pursuant to 5 V.I.C. § 1304 which does not award any of the relief sought in the petition, but requires the respondent to file a return, responding to the petition.

V.I. H.C.R. 2(d)(1).

## DISCUSSION

I.    *Petitioner's Transfer to Stateside Prison Facilities*

¶ 10    Regarding Petitioner's allegation that he was transferred to stateside prison facilities in violation of Virgin Islands law, Title 5 of the Virgin Islands Code provides in pertinent part concerning placement of inmates in the custody of BOC:

Commitment to institutions within the jurisdiction of the Bureau shall be to the Bureau, not to a particular institution. The Director of Corrections shall assign a newly committed inmate to an appropriate institution. He may transfer an inmate from one institution to another, consistent with the commitment and in accordance with treatment, training and security needs.

5 V.I.C. § 4505.

¶ 11    Further the Code provides:

The Director of Corrections is authorized to enter into agreements to use the correctional or detention facilities of the United States Bureau of Prisons; or the correctional facilities of any state or local government or private correctional entity located in the United States, its territories, possessions, commonwealths or the District of Columbia, which are accredited by the American Correctional Association, when the Director of Corrections determines that detention and/or correctional facilities within the Virgin Islands are inadequate to serve the best interest of the inmate or the general interest or welfare of the Territory; provided that as a condition of and prior to the transfer of any inmates, the Director of Corrections shall ascertain and insure the availability of educational and/or vocational programs at the institution they are to be transferred to for the purpose of enabling such inmates to gain marketable skills, and provided further that no inmate is to be transferred to any institution lacking any such program(s).

5 V.I.C. § 4503(c).

¶ 12    The provision cited by Petitioner requiring an administrative hearing before a three-person committee as a prerequisite to the transfer of a prisoner from V.I. prison facilities to a stateside facility (Title 5 C.V.I.R. § 4503-1) is qualified by the Rule's criteria for the transfer of selected inmates, as follows:

Selection of inmates to be transferred may be made by the following criteria and for any other good cause as determined by the Director; to wit:

(1) Prisoners who voluntarily request transfer.

(2) Inmates in need of medical or psychiatric care.

(3) Recommendation by the Courts to transfer the prisoner.

(4) Inmate with long-term sentencing. However, this criterion will be valid only so long as the Virgin Islands lacks facilities for extended segregation of long-term prisoners. For this purpose "long-term" means a sentence of imprisonment of not less than 10 years.

(5) A finding by the prison administration that the inmate is a high risk for escaping.

(6) A pattern of disruptive action or behavior on the part of the inmate.

(7) A finding by the Director that correctional facilities within the Virgin Islands are inadequate to serve the best interest of the inmate or the general welfare of the Territory.

Title 5 C.V.I.R. § 4503-9.

¶ 13    The Virgin Islands Code places persons sentenced to a term of imprisonment in the custody of the BOC, which "shall exercise general control over persons arrested, detained, or sentenced by a court of law." 3 V.I.C. § 375(a). Administration of the BOC is supervised and directed by the Director who "shall organize the [BOC] to provide security, custody and rehabilitation of correctional inmates." 3 V.I.C. § 373(b). The Director's broad authority over inmates includes the authority to transfer inmates to other facilities pursuant to 5 V.I.C. § 4503.

¶ 14    Further, "it is well established that the Fourteenth Amendment does not provide a prisoner with a liberty or property interest in remaining in a particular institution." *Simon v. Mullgrav*, 2021 U.S. Dist. LEXIS 73820, at *16 (D.V.I. Apr. 16, 2021) (citing *Meachum v. Fano*, 427 U.S. 215, 224 (1976)). "The Supreme Court has held quite explicitly that unless a statute confers upon a prisoner the right to be incarcerated in a particular prison, the Constitution does not require a hearing prior to a transfer." *Ali v. Gibson*, 631 F.2d 1126, 1134 (3d Cir. 1980) (citing *Meachum v. Fano*; *Montanye v. Haymes*, 427 U.S. 236 (1976)).

¶ 15    While the V.I. Rules provide procedures for the transfer of inmates, "there is no such Virgin Islands law, and no Virgin Islands statute that confers the right to be incarcerated in a particular prison." *Simon*, 2021 U.S. Dist. LEXIS 73820, at *17-18. "Additionally, the Supreme Court has considered state laws similar to the ones in the Virgin Islands and has concluded that they do not impose conditions—like a hearing—on the discretionary power to transfer." *Id.* at *18 (citing *Montanye v. Haymes*). The Supreme Court was "unwilling to go so far" as to accept the proposition that "any transfer, for whatever reason, would require a hearing as long as it could be said that the transfer would place the prisoner in substantially more burdensome conditions [than] that he had been experiencing." *Meachum*, 427 U.S. at 225. Courts should be loath to "subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." *Id.*

¶ 16    Despite the foregoing, the Supreme Court has also noted that liberty interests protected by the Due Process Clause may be created by state action that affects a prisoner's "freedom from

restraint" in a manner that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005) (citing *Sandin v. Connor*, 515 U.S. 472, 483-84 (1995)). Here, Petitioner alleges that his transfer to Red Onion and subsequently to Wallens Ridge, both "Supermax" institutions, imposed on him atypical and significant restraints on his liberty interests protected by the Due Process Clause, which restraints had not been imposed upon him in the minimum/medium level confinement at Golden Grove prior to his transfer. "[I]t is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson*, 545 U.S. at 223 (citing *Sandin*, 515 U.S. at 484).

¶ 17    At this stage of proceedings, we do not determine whether Petitioner is entitled to any relief or remedy but, taking Petitioner's factual allegations as true, assess only whether he has presented a prima facie case. Viewed in this light, Petitioner's claim that he was transferred without notice or hearing to a Supermax facility with atypical and significant restraints on his liberty to which he had not been subjected at Golden Grove establishes a prima facie case for habeas relief.

II.    *Religious Practices and Grooming Infractions*

¶ 18    Petitioner claims that his segregation for his refusal to comply with grooming policies of Red Onion and Wallens Ridge violated his First, Eighth and Fourteenth Amendment rights and runs afoul of the federal Religious Land Use and Institutionalized Persons Act ("RLUIPA") (42 U.S.C. § 2000cc). The Petition further alleges that the Virginia prisons do not provide Rastafarian religious services and related observances, including Rastafarian meals.

A.    *First Amendment and RLUIPA*

¶ 19    "The free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires[.]" *Miller v. People of the Virgin Islands*, 67 V.I. 827, 842 (V.I. 2017) (quoting *Chittenden Town Sch. Dist. v. Vermont Dep't of Educ.*, 738 A.2d 539, 563 (Vt. 1999)) (citations and internal quotation marks omitted). "As a fundamental liberty, 'religious expression [is] too precious to be either proscribed or prescribed by the [government].'" *Id.* (quoting *Lee v. Weisman*, 505 U.S. 577, 589 (1992)).

¶ 20    "Both a First Amendment free-exercise claim and a RLUIPA claim require a showing that the defendant imposed a substantial burden on the plaintiff's religious exercise." *Ofori v. Fleming*, 2022 U.S. Dist. LEXIS 150719, at *15 (W.D. Va. Aug. 22, 2022) (citing *Greenhill v. Clarke*, 944 F.3d 243, 253 (4th Cir. 2019)). A burden is deemed to be substantial if it puts "substantial pressure on an adherent to modify his behavior and to violate his beliefs, or . . . forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning the precepts of her religion on the other hand." *Greenhill*, 944 F.3d at 250 (citing *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006)).

¶ 21    Summary judgment was entered against Petitioner on his 2016 Complaint in the U.S. District Court for the Western District of Virginia (seemingly identical to Petitioner's Supplemental Complaint herein) on his First Amendment and RLUIPA claims. The United States Court of Appeals for the Fourth Circuit reversed, vacated and remanded in part, finding that "Burke has alleged a genuine dispute of material fact on whether the grooming policy substantially burdened his religious exercise." *Burke v. Clarke*, 842 F. App'x 828, 836 (4th Cir. 2021). In all other respects, summary judgment was affirmed.[6] The remaining claims were subsequently dismissed with prejudice pursuant to settlement and stipulation of the parties.

¶ 22    Another Virginia case involved a similar claim by inmate Maxwell, a Rastafarian, who refused to comply with the prison's grooming policy and as a result was segregated and not permitted to attend religious services. *See Maxwell v. Clarke*, 2013 U.S. Dist. LEXIS 83461, at *3-6 (W.D. Va., June 13, 2013) *aff'd*, 540 F. App'x 196 (4th Cir. 2013). The District Court held that the prison's grooming policy substantially burdened Maxwell's ability to practice his religion but found no First Amendment or RLUIPA violation as the grooming policy was deemed the least restrictive means to maintain the prison's compelling interest in order, security and discipline. *Id.* at *15-26. The Fourth Circuit affirmed "for the reasons stated by the district court" in a one paragraph per curiam opinion. 540 F. App'x at 196.

¶ 23    Here, Petitioner wears his hear in dreadlocks as an adherent of the Rastafarian faith, a practice that violates the prison's grooming policy and results in placement in segregation. Petitioner must accept his segregation from the general prison population to maintain his dreadlocks or must cut his hair, burdening his right to practice his faith. Taking Petitioner's factual allegations as true at this stage of these proceedings, without evidence from Respondents regarding the prisons' interest in order, security and discipline, Petitioner has established a prima facie case that the prison's grooming policy substantially burdened the religious exercise of his Rastafarian faith in violation of his First Amendment and RLUIPA rights.

> B.    *Eighth Amendment*

¶ 24    Petitioner's filings do not develop his claim that his segregation from the general prison population constitutes cruel and unusual punishment prohibited by the Eighth Amendment. The filings do not distinguish the treatment Petitioner has received from that of other similarly situated prisoners. The Petition does not demonstrate or allege "a sufficiently serious objective deprivation, and that a prison official subjectively acted with a sufficiently culpable state of mind, *i.e.*, deliberate indifference." *Maxwell v. Stridiron*, 45 V.I. 185, 191 (V.I. Terr. 2003) (citing *Tillman v. Lebanon County Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000)).

¶ 25    While the United States Supreme Court has determined that the administrative segregation of prisoners for extended periods under certain conditions may violate the Eighth Amendment, "it

---

[6] Whether any of Petitioner's seemingly identical claims presented in this case may be precluded by the doctrines of *res judicata* or collateral estoppel is not determined here.

is perfectly obvious that every decision to remove a particular inmate from the general prison population for an indeterminate period could not be characterized as cruel and unusual." *Id.* (citing *Hutto v. Finney*, 437 U.S. 678, 685-86 (1978)). Here, Petitioner's "conditions of confinement, though possibly unpleasant, do not constitute cruel and unusual punishment so long as his basic human needs, such as food, clothing, shelter, sanitation, medical care, and personal safety, are provided." *Id.* at 192 (citation omitted). Claims of deprivation of those basic human needs are missing from the Petition, such that no prima facie case is presented on this ground.

### C.    *Fourteenth Amendment Equal Protection*

¶ 26    Regarding Petitioner's claim that his confinement deprived him of participation in Rastafarian religious services and related observances, the United States Court of Appeals for the Fourth Circuit addressed the same issue, holding that: "Burke hasn't shown that any procedure for religious accommodations was unavailable to him *because* he's Rastafarian. Without such a showing, and without any other evidence of intentional discrimination, Burke's equal protection claims fail." *Burke v. Clarke*, 842 F. App'x at 839. Because Petitioner does not allege that discrimination against him as a Rastafarian was the cause of his disparate treatment, he has failed to establish a prima facie case under the Fourteenth Amendment's Equal Protection Clause.

### D.    *Fourteenth Amendment Due Process*

¶ 27    Petitioner alleges that his liberty interests were violated when he was segregated from other inmates without due process. We have found that Petitioner has presented a prima facie claim regarding his transfer from St. Croix to the Virginia Supermax facilities. He claims a similar deprivation of a liberty interest regarding his segregation within the Virginia facilities. To establish such a violation under the Fourteenth Amendment, an inmate must show a deprivation of "life, liberty, or property, without due process of law." U.S. CONST. amend. XIV § 1.

> When the punishment does not cause the original sentence to be enhanced, protected interests will be generally limited to freedom from restraint that imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *See, Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995) (holding that disciplinary segregation did not present the type of atypical, significant deprivation in which a state might create a liberty interest).

*Maxwell v. Clarke*, 2013 U.S. Dist. LEXIS 83461, at *11 (W.D. Va., June 13, 2013) *aff'd*, 540 F. App'x 196 (4th Cir. 2013).

¶ 28    We have found that Petitioner has alleged atypical and significant restraints on his liberty interests with regard to his transfer without notice or hearing from the minimum/medium level confinement at Golden Grove to the Virginia Supermax facility sufficient to state a prima facie due process claim. Yet, the Petition is insufficient to demonstrate the existence of a prima facie due process claim as to Petitioner's segregation within the Virginia facilities. Such discretionary action in the administration of prison populations is not atypical nor does Petitioner allege significant hardship from the ordinary incidents of prison life by virtue of his segregation (except as discussed above regarding his First Amendment claim). Petitioner does not have a protected

liberty interest in being housed as a part of the general prison population as opposed to being housed in segregation from other inmates and has not established a prima facie case for habeas relief on this ground.

III. *Access to Virgin Island Legal Materials*

¶ 29   The Supreme Court of the United States explains that prisons must provide "tools . . . the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis v. Casey*, 518 U.S. 343, 355 (1996). As such:

> [A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense.... 'meaningful access to the courts is the touchstone'..., and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.

*Id.* at 351 (citing *Bounds* v. *Smith*, 430 U.S. 817, 823 (1977)).

¶ 30   Petitioner claims that he has been unable to access Virgin Islands legal materials from the prison library, which he describes as inadequate in that the Virginia "prison system makes research very hard and is time consuming." Supplemental Complaint ¶ 37. Specifically, Petitioner claims that legal materials that were "needed to appeal his criminal case in the Virgin Islands" were inadequate as it did not contain "an updated workable version of electronic Virgin Islands codes." *Id.* ¶ 32. Yet, the appeal of Petitioner's conviction was filed and prosecuted by Virgin Islands counsel such that there was no need to rely upon prison library resources to present that appeal. The arguments Petitioner presents here are thorough with extensive references to Virgin Islands statutory and case law, as well as that from other jurisdictions. The Petition belies the claim that Petitioner lacks adequate access to legal research materials, as does the fact that Petitioner has filed at least three other petitions seeking post-conviction relief. In this context, Petitioner has failed to establish a prima facie case that he has suffered actual injury in that his right to meaningful access to the courts has been denied or that any shortcomings in the prison libraries hindered his efforts to pursue his legal claims.[7]

---

[7] From the record before it, the U.S. District Court for the Western District of Virginia in Petitioner's federal action noted that the prison's "law library also has a computer with access to Westlaw, which provides USVI forms and rules. Additionally, W[allens] R[idge] S[tate] P[rison] inmates also have access to a court-appointed institutional attorney who is available to provide them legal assistance." *Burke v. Clarke*, 2018 U.S. Dist. LEXIS 51403, at *7 n.4 (W.D. Va., March 27, 2018).

IV.     *Vocational and Education Opportunities*

¶ 31     Finally, Petitioner claims that he was denied educational/vocational programs in violation of 5 V.I.C. § 4503(c). That provision requires that the BOC Director ensure the availability of educational and/or vocational programs at the institution to which an inmate is transferred.[8]

> There is no requirement [under 5 V.I.C. § 4503] that the programs be comparable, nor that the Attorney General promulgate rules that ascertain that one institution's programs are more or less effective at making an inmate marketable than another institution's programs. While Appellant's desire to seek educational opportunities tailored to his aspirations are [sic] well-placed, the statute cannot be interpreted to create procedures nor objective criteria that are not within its text.

*Smith v. Stridiron*, 2008 U.S. Dist. LEXIS 107739, at *10 (D.V.I. App. Div. Feb. 27, 2008).

¶ 32     A prisoner has no expectation of protected property or liberty interest under section 4503(c) to receive the exact same educational or vocational programs at the new facility that he or she received in the Virgin Islands. *See Blyden v. Clarke*, Case No. 7:15CV00042, 2015 U.S. Dist. LEXIS 113377, at *15, 18-19 (W.D. Va. Aug. 26, 2015) (interpreting 5 V.I.C. § 4503(c) to find that the BOC has a statutory obligation to ensure that there are vocational or educational programs available at the new facility upon the inmate's transfer but they need not be exactly the same); *see also Maxwell v. Stridiron*, 45 V.I. 185, 194 (V.I. Terr. Ct. 2003) (rejecting the petitioner's argument that the lack of "quality of educational resources at [a detention facility] renders a transfer unconstitutional under the Fourteenth Amendment and thus amenable to habeas corpus relief."). BOC must merely determine that the new facility offers some kind of educational or vocational programs [sic].

*Simon v. Mullgrav*, 2018 V.I. LEXIS 97, at *20-21 (V.I. Super. 2018).

¶ 33     The Petition concedes the existence and availability of educational and vocational programs at the Virginia facilities but reports that Petitioner did not participate "due to the fact of having dreadlock which prohibits him from being in kitchen or laundry where prisoners in compliance with the grooming policy/standards are employed and skilled." Supplemental Complaint ¶ 31. Even though Petitioner could not participate in person in those programs together with inmates who were "in compliance," he was not denied access to the programs. "I am allowed to and are afforded the opportunity to educational resources however the operating procedure 864.2 policy states that it must be through long distance learning." *Id.* ¶ 40.

---

[8] Summary judgment was entered against Petitioner on this same claim in his federal action, from which he did not appeal to the Fourth Circuit. "The district court also denied summary judgment on another equal protection claim, this one alleging that prisoners from the Virgin Islands who were housed in the Violators Housing Unit were denied equal access to educational and vocational programming. As discussed infra, a magistrate judge later granted summary judgment on the claim, and Burke has not appealed that ruling." *Burke v. Clarke*, 842 F. App'x at 834 n.4.

¶ 34    As Petitioner concedes that he is not denied access to educational and vocational programs, he has failed to establish a prima facie case and is not entitled to habeas relief on this claim.

**CONCLUSION**

¶ 35    For the reasons stated herein, the Petition will be granted in part. Specifically, the Petition states a prima facie case that Respondents' transfer of Petitioner from the Golden Grove facility to the Supermax institutions in Viginia without notice or hearing significantly restrained his liberty interest in violation of his due process rights. Further, the Petition states a prima facie case that Petitioner's segregation from the general prison population on account of his noncompliance with the grooming policies substantially burdened the religious exercise of his faith in violation of his First Amendment rights. These claims have not been previously presented and are not barred as a matter of law. In all other respects, the Petition fails to set forth a prima facie case and will be dismissed.

¶ 36    In light of the foregoing, it is hereby

ORDERED that the Petition for Writ of Habeas Corpus is **GRANTED IN PART**, as to allegations that Petitioner was deprived of due process by Respondents' actions transferring him to Supermax facilities that impose atypical and significant restraints beyond the ordinary incidents of prison life. It is further

ORDERED that the Petition for Writ of Habeas Corpus is **GRANTED IN PART**, as to allegations that the Virginia prisons' grooming policies substantially burdened Petitioner's First Amendment right to free exercise of his religious faith. It is further

ORDERED that, as all other claims of the Petition fail to state a prima facie case for relief, those claims are **DENIED** and **DISMISSED** with prejudice. It is further

ORDERED that a Writ of Habeas Corpus is hereby issued as to the matters set forth above, and Respondents shall file their Return **within 30 days of the date of this Order** and shall serve a copy on Petitioner. It is further

ORDERED that Petitioner may file his Traverse **within 30 days of the date of** service on him of Respondents' Return. It is further

ORDERED that a copy hereof shall be served upon Petitioner and all Respondents.

**SO ORDERED** this ___20___ day of September, 2023.

_____
DOUGLAS A. BRADY, JUDGE

**ATTEST:**
TAMARA CHARLES
Clerk of the Court

By: _____
            Court Clerk





**FILED**
September 20, 2023 12:00 PM
SX-2013-CV-00377
**TAMARA CHARLES**
**CLERK OF THE COURT**

IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

RANDY BURKE,

Petitioner,

v.

ARIEL M. SMITH, ESQ., Attorney General of
the Virgin Islands; WYNNIE TESTAMARK,
Director, Virgin Islands Bureau of Corrections;
DANA GRANT, Acting Warden, John A. Bell
Correctional Facility

Respondents.

**CASE NO. SX-2013-CV-00377**

PETITION FOR WRIT OF
HABEAS CORPUS

## ORDER

Before the Court are Petitioner Randy Burke's Motion for Leave to Proceed In Forma Pauperis Pursuant to Title 4 V.I.C. § 513(a) ("In Forma Pauperis Motion"), Motion for Service of Process by the Superior Court Marshal Service ("Motion for Service"), and Motion for Appointment of Counsel ("Motion for Counsel"), all filed October 22, 2013 together with his Motion for Writ of Habeas Corpus and/or Motion for Injunctive Relief ("Habeas Petition") which is addressed by Memorandum Opinion and Order entered herewith.

By his In Forma Pauperis Motion, Petitioner asserts that he is indigent and cannot afford to pay costs and fees associated with the prosecution of his Habeas Petition, that he has no funds, bank accounts or property. The In Forma Pauperis Motion was "Sworn to under pains and penalties of perjury of 28 U.S.C. § 1746. That the foregoing statement is true and correct." The Court accepts Petitioner's representations as an unsworn declaration substantially satisfying the terms of V.I. R. Civ. P. 84(a) and will grant the In Forma Pauperis Motion consistent with the requirements of 4 V.I.C. § 513(a).

Pursuant to 4 V.I.C. § 513(c), the Court shall serve all process related to the Habeas Petition. Because the Habeas Petition is granted in part, the Court is charged with serving the writ on Respondents per 5 V.I.C. § 1306. As such, the Motion for Service will be granted.

As to Petitioner's Motion for Counsel, it is well established that there is no constitutional right to have counsel appointed in habeas proceedings. *See Alexander v. People*, 65 V.I. 385, 393 (V.I. 2016). Yet, pursuant to 4 V.I.C. § 513(d), the Court has the discretion to appoint counsel for an indigent petitioner. Petitioner asks the Court to exercise its discretion to grant counsel because:

(1) these issues are complex;
(2) he lacks knowledge of the law;
(3) he doesn't know the law and cannot represent himself;
(4) he needs "someone who will have experience in this field;"
(5) he has no access to Virgin Islands law books at Red Onion State Prison;
(6) all criteria and factors pertaining to appointment of counsel are met per *Tabron v. Grace*, 3 F. 3d 147, 154 (3d. Cir. 1993);
(7) he is indigent and cannot afford to retain counsel;
(8) he has no access to copy machine, computer or typing machine and must hand-write his motions as he is in solitary confinement;

(9) he is subject to cruel and unusual punishment by being placed in solitary confinement for refusing to cut his hair; and

(10) he seeks an attorney "who is impartial, fair and knows how to handle this matter."

In exercising its discretion to rule on the Motion for Counsel, the Court reviews Petitioner's proffered factors supporting appointment of counsel. Factors (1), (2), (3), (4), (7), (8) and (10) support appointment to some degree.

Factor (5) is contradicted by other information before the Court. Specifically, Petitioner was transferred to Wallens Ridge State Prison on May 30, 2014. Supplemental Complaint ¶ 25. In his Section 1983 complaint filed in the United States Court for the Western District of Virginia, the District Court found that the Wallens Ridge "law library has a computer with access to Westlaw, which provides USVI forms and rules. Additionally, WRSP inmates also have access to a court-appointed institutional attorney who is available to provide them legal assistance." *Burke v. Clarke*, 2018 U.S. Dist. LEXIS 51403, at \*7 n.4 (W.D. Va., March 27, 2018).

Factor (6) relates to in forma pauperis proceedings in the courts of the United States pursuant to 28 U.S.C. § 1915 where, like here, the district courts are vested with broad discretion regarding appointment of counsel for indigent persons in collateral proceedings. In *Tabron v. Grace*, the Third Circuit looked to standards set forth in dicta in *Smith-Bey v. Petsock*, 741 F.2d 22, 26 (3d Cir. 1984), to the effect that ruling on a motion to appoint counsel "is discretionary with the court and is usually only granted upon a showing of special circumstances indicating the likelihood of substantial prejudice" to the petitioner. *Tabron v. Grace*, 6 F.3d 147, 154 (3d Cir. 1993). That likelihood of prejudice standard is inapplicable in this review.

Factor (9) is deemed irrelevant to instant Motion.

The factors Petitioner describes have not resulted in any apparent hardship to him acting *pro se*. Indeed, Petitioner has exhibited the ability to research and cogently present arguments regarding his claims for habeas relief. As such, at this stage of these proceedings, the Motion for Counsel will be denied without prejudice.

In light of the foregoing, it is hereby

ORDERED that Petitioner's Motion for Leave to Proceed In Forma Pauperis and Motion for Service of Process are GRANTED. It is further

ORDERED that Petitioner's Motion for Appointment of Counsel is DENIED without prejudice. It is further

ORDERED that a copy hereof shall be served upon Petitioners and all Respondents.

Dated: September __20__, 2023.

DOUGLAS A. BRADY, JUDGE

ATTEST: TAMARA CHARLES
Clerk of the Court

By: _____
Court Clerk Supervisor



**FILED**

September 20, 2023 12:45 PM
SX-2013-CV-00377
**TAMARA CHARLES**
**CLERK OF THE COURT**

# IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## District of St. Croix

| | |
|---|---|
| **Randy Burke,** | Case Number: **SX-2013-CV-00377** |
|         **Petitioner,** | Action: **Writ of Habeas Corpus** |
| **v.** | |
| **Ariel M. Smith, Esq., Attorney General of the Virgin Islands, et al.** | |
|         **Respondents.** | |

# NOTICE of ENTRY
## of
## <u>JUDGMENT/ORDER</u>

**To:**   Randy Burke                 _____
        Pamela R. Tepper, Esq.      _____
                                      _____
                                      _____

             **Please take notice that on September 20, 2023**
    **a(n)** _____ **Memorandum Opinion and Orders** _____
        **dated**     **September 20, 2023**     **was/were entered**
        **by the Clerk in the above-titled matter.**

**Dated:**    **September 20, 2023**                  **Tamara Charles**
                                         **Clerk of the Court**
                        **By:**

                                        **Cheryl Parris**
                                        **Court Clerk III**